UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WENDY TOWNER; et al.,            )
                                 )
    Plaintiff,           )
                                 )
        v.                  )    Case No. 2:22-cv-145
                                 )
CENTURY ARMS, INC., and          )
ROMARM, S.A.,                    )
                                 )
    Defendants.          )

**OPINION AND ORDER**

In late 2024, the Court issued an Opinion and Order denying Defendant Century Arms, Inc.'s motion to dismiss. Shortly thereafter, Defendant filed a motion for reconsideration, arguing in part that a then-pending Supreme Court case may require this Court to alter its analysis. On June 5, 2025, the Supreme Court issued a unanimous opinion in that case, *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025). The parties submitted briefing following that decision. The Court has considered that briefing and the holding of the *Smith & Wesson* case and finds that dismissal of the claims against Century Arms is now warranted for the reasons below.

**Background**

This case arises out of a 2019 mass shooting in California. The weapon used in the shooting was a WASR-10 rifle legally purchased by the shooter from a gun dealer in Nevada. The

shooter was a Nevada resident at the time of purchase. That weapon is banned in California.

Plaintiffs are California residents who were injured or lost loved ones in the shooting. Defendant Romarm, S.A., a firearms manufacturer operating in Romania, allegedly manufactured the WASR-10 rifle used in the attack. Defendant Century Arms is a firearms manufacturer incorporated in Vermont and headquartered in Florida. Century Arms is Romarm, S.A.'s sole distributor of WASR-10s in the United States.

The Complaint alleges that Defendants' decisions in designing, marketing, pricing, and distributing WASR-10s directly and foreseeably contributed to Plaintiffs' injuries. Plaintiffs further allege that Defendants fostered an illegal secondary market for WASR-10s among California-based criminals, intentionally flooding the Nevada market with more WASR-10s than that state's market could bear. The Complaint alleges Defendants had actual knowledge that WASR-10s were being illegally trafficked from Nevada into California, that the weapons were being used in crimes in California, and that Defendants continued to engage in these practices despite that knowledge.

On December 3, 2024, the Court denied Defendant Century Arms' motion to dismiss. One of the myriad issues the Court confronted was the scope and applicability of the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-7903

which shields gun manufacturers from many forms of liability.
The Court determined that PLCAA did not bar Plaintiffs' claims
because Plaintiffs had plausibly pled an aiding and abetting
theory that satisfied the predicate exception to PLCAA's
liability bar. The Court found that "Plaintiffs' position [was]
supported by two seminal cases," ECF No. 30 at 34, *Direct Sales
Co. v. United States*, 319 U.S. 703 (1943) and *Estates Unidos
Mexicanos v. Smith & Wesson Brands, Inc.,* 91 F.4th 511 (1st Cir.
2024). The latter case from the First Circuit was reversed and
remanded by the Supreme Court in an opinion that distinguished
*Direct Sales* and clarified the requirements of establishing
aiding and abetting for the purpose of PLCAA. That decision
necessitated this Court's reconsideration of its December 2024
opinion.

## Discussion

The Court's December 2024 opinion described in detail the
parties' arguments about PLCAA's applicability, ECF No. 30 at
30-41, and that background is not repeated fully here. The
Supreme Court summarized the analogous issue in the *Smith &
Wesson* case:

> PLCAA's general bar on those suits has an exception,
> usually called the predicate exception, relevant here. That
> exception applies to suits in which the defendant
> manufacturer or seller "knowingly violated a State or
> Federal statute applicable to the sale or marketing" of
> firearms, and that "violation was a proximate cause of the
> harm for which relief is sought." § 7903(5)(A)(iii). If a

plaintiff can show that provision is satisfied—that, say, a
manufacturer committed a gun-sale violation proximately
causing the harm at issue—then a suit can proceed, even
though it arises from a third party's later misuse of a
gun. Or otherwise said, the predicate violation opens a
path to making a gun manufacturer civilly liable for the
way a third party has used the weapon it made.

Notably here, the predicate violation PLCAA demands may
come from aiding and abetting someone else's firearms
offense. . . . So principles of aiding and abetting from the
criminal law—establishing what counts as aiding and
abetting and what does not—may determine whether a
plaintiff can satisfy PLCAA's predicate exception and thus
proceed with a civil suit otherwise barred. And that
dependence on aiding-and-abetting law is a feature of the
case before us.

605 U.S. at 286-87.

In short, the plaintiff in *Smith & Wesson*, just as the

Plaintiffs in this case, attempted to avoid PLCAA's liability

bar by arguing that a gun manufacturer had aided and abetted

another's violation of a firearms law, in this case illegal gun

possession in California. As a result, the Supreme Court was

confronted with a variation of the question that this Court

previously considered. In its analysis, the Court clarified the

scope of federal aiding and abetting law:

Federal aiding-and-abetting law reflects a centuries-old
view of culpability: that a person may be responsible for a
crime he has not personally carried out if he deliberately
helps another to complete its commission. To aid and abet a
crime, a person must take an affirmative act in furtherance
of that offense. And he must intend to facilitate the
offense's commission. Or as Judge Learned Hand stated those
requisites, in what has become a canonical formulation, an
aider and abettor must participate in a crime as in
something that he wishes to bring about and seek by his
action to make it succeed.

4

In elaborating on that demand, this Court has developed
several ancillary principles. First, aiding and abetting is
most commonly a rule of secondary liability for specific
wrongful acts. It is possible for someone to aid and abet a
broad category of misconduct, but then his participation
must be correspondingly pervasive, systemic, and culpable.
Second, aiding and abetting usually requires misfeasance
rather than nonfeasance. Absent an independent duty to act,
a person's failures, omissions, or inactions—even if in
some sense blameworthy—will rarely support aiding-and-
abetting liability. And third, routine and general activity
that happens on occasion to assist in a crime—in essence,
incidentally—is unlikely to count as aiding and abetting.
So, for example, an ordinary merchant does not become
liable for all criminal misuses of his goods, even if he
knows that in some fraction of cases misuse will occur. The
merchant becomes liable only if, beyond providing the good
on the open market, he takes steps to promote the resulting
crime and make it his own.

*Id.* at 291-92 (cleaned up).[1] The Supreme Court went on to find

that the plaintiff in that case "set for itself a high bar"

because "[t]he complaint does not pinpoint, as most aiding-and-

abetting claims do, any specific criminal transactions that the

---

[1] This Court's December 2024 opinion analyzed the question of
aiding and abetting under California law which provides that
"[A] person is guilty of aiding and abetting if he or
she, acting with (1) knowledge of the unlawful purpose of the
perpetrator; and (2) the intent or purpose of committing,
encouraging, or facilitating the commission of the offense, (3)
by act or advice aids, promotes, encourages, or instigates, the
commission of the crime." ECF No. 30 at 33 (quoting *Mitchell v.
Prunty*, 107 F.3d 1337, 1340 (9th Cir. 1997)). The Ninth Circuit
has held that "aiding and abetting liability under California
law is no different from aiding and abetting liability under
federal law," *Roman-Suaste v. Holder*, 766 F.3d 1035, 1037 (9th
Cir. 2014), so the Court considers the Supreme Court's
formulation applicable in this case.

defendants (allegedly) assisted." *Id*. at 294. While "[t]he
systemic nature of that charge is not necessarily fatal," "[t]o
survive, the charge must be backed by plausible allegations of
pervasive, systemic, and culpable assistance." *Id.* This high bar
contrasts with a potential lower bar if the complaint would
"pinpoint, as most aiding-and-abetting claims do, any specific
criminal transactions that the defendants allegedly assisted."
*Id.* The Supreme Court thus appears to have established two
categories of aiding and abetting claims for the purpose of
PCLAA's predicate exemption. One variety applies when there a
specific criminal transaction that is alleged. The other, more
stringent, inquiry applies where the allegation systemic in
nature.

This Court's previous opinion did not apply the higher bar
for systemic aiding and abetting. Instead, the Court adopted a
blended inquiry and found:

> Tracking the elements of aiding and abetting under
> California law, these facts plausibly support a finding
> that (1) Defendants knew that California-based criminals
> were buying guns in Nevada with the illegal intent of
> transporting them into California, (2) Defendants flooded
> the Nevada market with guns and employed marketing and
> pricing strategies with the intent of encouraging or
> facilitating such transport, not merely with indifference
> that such transport occurs, and (3) Defendants' acts aided
> the commission of illegal gun possession in California.

ECF No. 30 at 37.

The issue for reconsideration, in light of *Smith and Wesson*, is that none of those findings are particular to the specific incident in this case. The shooter was a Nevada resident at the time of purchase, so his purchase was presumptively legal. Plaintiffs have not alleged with any specificity that Defendants advertised or marketed their products in any way that encouraged the shooter to take his legally purchased firearm across the border to California where it would be illegally possessed. The oversupply argument similarly fails, as applied to the shooter, because he was a Nevada resident. No matter how many surplus guns were distributed in Nevada beyond what the Nevada market could bear, the fact that the Plaintiff was a part of the Nevada market who was not engaged in some sort of broader trafficking scheme is a flaw in that reasoning. Put another way, the firearm at the center of this case was not part of an excess supply allegedly flooded into Nevada with the goal of attracting California residents for the simple reason that the shooter was a Nevada resident. So, while Defendants' act in manufacturing the firearm and marketing it in Nevada may have aided the commission of some illegal gun possession in California, it does not follow, on the facts pled, that they aided the *shooter's* illegal gun possession in California "beyond providing the good on the open market." *Smith & Wesson*, 605 U.S. at 292 (citing *United States v.*

7

*Falcone*, 109 F.2d 579, 581 (2d Cir.) (L. Hand, J.), *aff'd*, 311

U.S. 205 (1940). There is nothing in the pleadings that suggests

that, at the time of sale, the transaction appeared as anything

other than ordinary. Therefore, the facts alleged in the case do

not amount to a plausible claim that the Defendants aided and

abetted this specific shooting.

    The other potential option is liability founded on systemic

aiding and abetting. This theory was directly contemplated in

the *Smith & Wesson* case, and, as noted above, it creates a

higher burden for the Plaintiff. "To survive, the charge must be

backed by plausible allegations of 'pervasive, systemic, and

culpable assistance.'" *Smith & Wesson*, 605 U.S. at 294 (citing

*Twitter, Inc. v. Taamneh*, 598 U.S. 471, 502 (2023)).

    The Court's previous discussion of aiding and abetting

incorporated elements of this analysis. Potential findings (1)

and (2), ECF No. 30 at 37, reproduced above, appear to support a

plausible allegation of systemic and culpable assistance.

However, there are two concerns that weigh against the

Plaintiffs in this case. First, the *Smith & Wesson* court

highlighted the complicating factors of distributors and the

dealers who ultimately sell the weapons: "Given that industry

structure, Mexico's complaint must offer some reason to believe

that the manufacturers attend to the conduct of individual gun

dealers, two levels down." 605 U.S. at 295. As in that case,

Century Arms sold the rifle at issue in this case to a distributor in Texas who later sold it to a retailer. ECF No. 39 at 7 n.1. Plaintiffs have not meaningfully addressed how Century Arms retains potential liability as opposed to the dealer who is not named. The Court's earlier third potential finding, that "Defendants' acts aided the commission of illegal gun possession in California" may well be true in other instances, but it has not been plausibly pled as it relates to the illegal gun possession at issue in this case, as discussed above. In other words, while Plaintiffs may be able to show that Defendants systemically aided and abetted the illegal possession of other firearms in California, those firearms cannot support aiding and abetting liability in this case because they did not proximately cause the harm that Plaintiffs experienced.

"The predicate exception allows for accomplice liability only when a plaintiff makes a plausible allegation that a gun manufacturer 'participate[d] in' a firearms violation 'as in something that [it] wishe[d] to bring about' and sought to make succeed." *Smith & Wesson*, 605 U.S. at 299 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)). Plaintiffs have not plausibly pled that the firearms violation in this case—illegal possession in California—was individually or systemically aided and abetted by the Defendants, such that Plaintiffs could

9

satisfy PLCAA's predicate exception. Therefore Plaintiffs' claims, as pled, are barred by PLCAA.

## Conclusion

For the reasons set forth above, Defendant's motion for reconsideration is granted, and the claims against Defendant Century Arms are dismissed.

DATED at Burlington, in the District of Vermont, this 29th day of September 2025.


/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge